PACE v. MOORE et al. (No. 2092.)

(Court of Civil Appeals of Texas. Texarkana. March 6, 1919.)

MUNICIPAL CORPORATIONS ⬅706(5)—STREETS —COLLISION—NEGLIGENCE—EVIDENCE.

In an action for personal injuries resulting from defendant's automobile colliding with plaintiff's wagon on a city street, evidence *held* insufficient to justify a finding that the driver of the car was negligent in the manner charged.

Error from District Court, Hunt County; A. P. Dohoney, Judge.

Action by Clark Pace against A. S. Moore and others to recover for personal injuries. Judgment for defendants, and plaintiff brings error. Affirmed.

Geo. J. Perkins and H. O. Norwood, both of Greenville, for plaintiff in error.

Sherrill & Starnes, B. O. Evans, and Crosby & Harrell, all of Greenville, for defendants in error.

HODGES, J. The plaintiff in error sued the defendant in error A. S. Moore to recover damages resulting from personal injuries. In his amended original petition he alleged, in substance, as follows: On October 20, 1916, he was traveling south on the west or right side of Wright street, in the city of Greenville, driving his horse hitched to a delivery wagon, and when near the middle of the block he met Bryon Stapleton, driving a delivery car belonging to the defendants at a high and reckless rate of speed, going north on the same street and on a mission incident to his employment by the defendants; that Stapleton negligently and carelessly, without fault on the part of the plaintiff, drove the car against plaintiff's hack and horse with great force and violence, causing injuries which he sets out in detail. It is further alleged that the defendant was guilty of negligence in failing to properly equip his car with sufficient headlights, that the driver was running the car at a greater rate of speed than 15 miles per hour in violation of an ordinance of the city of Greenville, and that he was driving on the left side of the street in violation of another ordinance of that city. At the conclusion of the plaintiff's testimony, the court instructed a verdict for the defendant.

Under his averments the plaintiff in error had the burden of proving two facts: (1) That the collision with the car .was due to the negligence alleged; and (2) that the car was at the time being operated in the service of the defendant in error. The testimony that the car was being operated in the service of the defendant in error at the time this collision occurred is very unsatisfactory; but, assuming that it was sufficient, the further question remains: Did the plaintiff in error offer sufficient testimony to show that the defendant in error or his agent was guilty of the negligence charged? By his own witness the plaintiff in error proved, on direct examination, that the car was running at about 6 miles an hour at the time the collision occurred. According to plaintiff's testimony, just a little while before the collision occurred, a large car with very brilliant headlights passed him going in the same direction. He pulled to the right in order to give this car room. He discovered the car in which Stapleton was riding, some distance before it reached him. He thus testifies as to what part of the street he was on at the time the collision occurred.

"The wagon tracks were in the center of the street, and I was west of them. I mean to say that my left wheels were about the left wagon tracks. It is not a fact that as soon as the danger of the car coming behind me was over that I turned back in the road again. I never did pull back in the road; I kept on. I saw the other car (meaning the car that struck him) when it was coming toward me. It was about as far from me as from here across the street when I first saw it. I saw it just as the cars pulled apart. I had not seen that car before; I was looking at the red light at the hind end of the car that had just passed me. But when they pulled apart I saw him and his lights, and knew he was coming. He was not on the side I was on; he was in the center of the street. I do not want to take that back; he was right in the center of the street, where the ruts are and where everybody drives; he was driving in the usual and ordinary place, and I saw him coming. I did not pull out of his way. I was coming meeting him, and I thought he would pull out. I was already out, and he was right in the center of the road, and I thought when he got close enough to me he would pull on this side and. pass me. It was very dark, but I do not know about his lights not being good enough to see me. I was already in the left track with my left wheel, and if I had pulled out half an inch further I don't guess he would have hit me. I could see, when he was as close to me as it's from here across the street, that he was traveling in the ordinary place. His lights looked dim to me; I don't know how they looked to him. I staid my ground until he hit me; I thought he was going to pull out. I would have pulled out and give him all the road, if I had thought that he was going to hit me."

In another portion of his testimony the plaintiff in error states that when the collision occurred he heard Stapleton say:

"Whoever that was in the other car, he was the cause of it. He threw his lights in my face and blindfolded me, and I could not see."

Dave Pitts, plaintiff in error's witness, who was riding in the car with Stapleton at the time the collision occurred, testified that they were so blinded by the headlights of this large car that they could not see.

We do not think this testimony is sufficient to justify a finding that the driver of the car was guilty of negligence in the manner charged; and the judgment is affirmed.